UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELEX CURRENCY SERVICES, INC.,

        Plaintiff,

- against -

PUENTE ENTERPRISES, INC.,

        Defendant.

PUENTE ENTERPRISES, INC.,

        Counterclaimant,

- against -

TRAVELEX CURRENCY SERVICES, INC.,

        Counter-Defendant.

PUENTE ENTERPRISES, INC.,

        Third-Party Plaintiff,

- against -

JAMES C. HEWITT, JR.,

        Third-Party Defendant.

**OPINION & ORDER**

18 Civ. 1736 (ER)

RAMOS, D.J.:

After deposing the third-party defendant and former chief executive officer of Travelex, James Hewitt, PEI moves for leave to inquire into two areas of discovery:

    (1) facts related to Travelex's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to terminate his contract; and

(2) facts related to the "pattern and practice" of discrimination at Travelex that Mr. Hewitt admitted existed in his short tenure at Travelex.

Doc. 115 at 1. It further moves for sanctions against counsel for Travelex and Hewitt for impeding that deposition. The motion for discovery is GRANTED in part and DENIED in part. The motion for sanctions is DENIED.[1]

## I. BACKGROUND

The Court has described the full background of this matter in its two previous Opinions and Orders: *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, No. 18 Civ. 1736 (ER), 2020 WL 1487297, --- F. Supp. 3d ---- (S.D.N.Y. Mar. 27, 2020) and *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, No. 18 Civ. 1736 (ER), 2019 WL 1259102 (S.D.N.Y. Mar. 19, 2019).

Of relevance to this motion, PEI has pleaded a counterclaim against Travelex alleging breach of contract. Answer and Counterclaim ¶¶ 124–25, Doc. 12. It alleges that Travelex terminated a contract with PEI "on grounds that were entirely manufactured" related to the usage of and rights surrounding a bank account.[2] *Id.* ¶ 2. PEI further alleges that Travelex made several changes to the procedures governing their relationship in 2014, including the imposition of fees and certain cash flow requirements. *Id.* ¶ 50–53. PEI characterizes these actions as "diminish[ing] the commercially useful function provided by PEI and in turn discriminat[ing] against PEI — a minority woman-

---

[1] Given that the briefing for this motion has been filed under seal, the Court has likewise filed this full Opinion & Order under seal and directed the parties to create a redacted version for public filing by Friday, August 14.

[2] As alleged in the Counterclaim:

> Travelex purported to terminate the DFW Agreement on grounds that were entirely manufactured and indeed based on facts and conduct that Travelex was well aware of for almost nine years, including the structure of PEI's operating account, which gave Travelex broad rights to view PEI's operating account, including account statements, wire reports, deposit ticket inquiries, item inquiries, and summary viewing, but not signing privileges on PEI's operating account — something multiple executives at Travelex knew and acknowledged as acceptable. Travelex terminated the DFW Agreement even after PEI advised Travelex that it would modify the account structure per Travelex's demand that it be changed.

Answer & Counterclaim ¶ 2.

owned [business] . . . ." *Id.* ¶ 50–54. Discrimination against PEI, it claims, would cause Travelex to be in breach of the web of contracts connecting the two entities.[3] In addition, PEI alleges in an affirmative defense against Travelex's own claims of breach of contract that Travelex breached the covenant of good faith and fair dealing. Answer & Counterclaim at 15. In its third-party complaint against Hewitt, PEI only alleges claims of defamation.

PEI deposed Hewitt via videoconference on June 30, 2020. Doc. 108 Ex. A ("Hewitt Tr."). Counsel for PEI — Erik Sardina of Kaufman, Dolowich & Voluck, LLP — started by reviewing Hewitt's professional background and history at Travelex. *Id.* at 1–21. As Sardina began asking questions regarding Hewitt's compensation, counsel for Travelex and Hewitt — John Briody of McKool Smith — began to object, asking why the line of inquiry was relevant. *Id.* at 22:9–10. Briody, however, allowed the deposition to continue for a few minutes, until saying, "I'm going to let a little more questioning on this go. I don't see how it's relevant to anything relating to this case at all." *Id.* at 26:23–27:1.

As the deposition continued, Hewitt testified that he ▇▇▇▇▇▇▇▇▇▇▇▇▇ in June 2019, Hewitt Tr. at 14:23–24, and Sardina subsequently asked, ▇▇▇▇▇▇▇▇▇▇ *Id.* at 28:2. Briody objected and ordered Hewitt not to answer, saying, "This is not relevant to anything. Move on. Don't answer any of these questions. You want to establish some relevance, you could go ahead." *Id.*

---

[3] Specifically, PEI points to section 5 of the 2010 Houston Services Agreement, which states:

> Subject to the modifications contained herein, you [PEI] agree to provide the Services in full compliance with the necessary guidelines that we [Travelex] may set or vary from time to time, and you hereby acknowledge our right to modify and/or make additions or deletions to our guidelines, in our sole discretion, provided such guidelines do not conflict with any Airport Authority or Landlord guidelines or the Main Agreement.

Doc. 108 Ex. C at 3. The airports both forbid racial discrimination between contractors and subcontractors in the relevant operating agreements signed by Travelex. *See* Doc. 108 Ex. D at PEI 883, 95–97; Ex. E at TVX_PEI 126–27; and Ex. D at PEI 778, 794.

at 27:3–28:8. As Sardina attempted to lay foundation for his questioning, Briody interjected:

> MR. BRIODY: I'm going to let you answer one question that I think should cut to the chase. Did ▮▮▮▮▮ have anything —
>
> MR. SARDINA: Counsel —
>
> MR. BRIODY: I'm telling you what I'll allow him to get into and you could accept or reject it.
>
> MR. SARDINA: Counsel —
>
> MR. BRIODY: I'll let you ask him whether it had anything to do with this case or this litigation, but beyond that, you need to move on.
>
> MR. SARDINA: Counsel, you can't do speaking objections in the middle. You know that.
>
> MR. BRIODY: I'm speaking to you. I'm speaking to you and I'm telling you —
>
> MR. SARDINA: And you're offering a speaking objection. You cannot offer a speaking objection. Are you telling him not to answer? Do we need to call the judge?
>
> MR. BRIODY: I'm telling you what I'll allow him to answer and then you could go from there.
>
> MR. SARDINA: That's not your role. You could object to the form of the question. You could object to privilege. Okay.
>
> MR. BRIODY: I could also object and instruct the witness not to answer on questions that are groundless and baseless and so I'm allowing you to ask questions. I'm trying to work with you, counsel.
>
> MR. SARDINA: Maybe during a break we'll talk and try and get the judge on the line so we could figure out how to address this.
>
> MR. BRIODY: Okay.

Hewitt Tr. at 28:16–29:22. Sardina then asked Hewitt why ▮▮▮▮▮. Hewitt responded:

> In as much as it satisfies what it seems you're trying to get to, if I was ▮▮▮▮▮
> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████

Hewitt Tr. at 30:25–31:11. The parties then took a short break after having been on the record for about 40 minutes. *Id.* at 30:12–17.

When they returned, Briody directed Hewitt not to answer any further questions "concerning ██████████████," arguing they were "abusive, harass[ing]" and had "[n]othing to do with this matter . . . [b]ased on the witness's own testimony. It's also confidential and irrelevant to any claim here." Hewitt Tr. at 35:24–36:4. Sardina continued:

> Q. Do you believe that Travelex has engaged in a pattern or practice of discrimination during your time at CEO of Travelex?
>
> MR. BRIODY: Objection.
>
> MR. SARDINA: You're objecting — I didn't ask him about ████████. I asked during his tenure as CEO whether or not he believed —
>
> MR. BRIODY: I gave an objection. He could answer. I'm objecting. I didn't give an instruction not to answer. You could answer that. That's a question of during your time at Travelex was there a pattern or practice of discrimination?
>
> MR. SARDINA: Hold on.
>
> Q. Before you answer, Mr. Hewitt, before you answer, there was a pattern and practice?
>
> A. Yes.
>
> MR. BRIODY: Objection to form.
>
> Q. Describe the pattern and practice you understand existed at Travelex during your time as CEO of Travelex?
>
> A. I'm sorry, this is —
>
> MR. BRIODY: Do not answer.
>
> A. I'm sorry, as I'm understanding it you're assuming that ██████████████████████████ I'm letting you know that ████████ had nothing to do with this and it's making me uncomfortable. I've been very clear about what did ████████████████████ ████ And I want to you stop pestering me about this. I was very clear about ████████████████████████████ and I'm

5

> uncomfortable and I want you to stop asking me questions about it. ▮▮

Hewitt Tr. at 38:5–39:14. Sardina attempted to ask about the nature of this "pattern and practice of discrimination," but Hewitt refused to answer and Briody further instructed him to not answer. *Id.* at 39:22–40:3. The deposition transcript continued for another sixty pages before the parties broke for lunch. *Id.* at 106:1.

After lunch, the parties contacted the Court to discuss whether PEI would be permitted to inquire more into the "pattern and practice of discrimination" Hewitt had mentioned. Hewitt Tr. at 106:13–108:9. As the parties were explaining the situation, Briody disputed Hewitt's testimony and discussed the current relationship between Travelex and its former CEO:

> There is no pattern and practice of discrimination at Travelex. The testimony that it was [elicited], Mr. Hewitt ▮▮▮▮▮▮, and I permitted Mr. Hewitt to answer the question. And to be clear, your Honor, the testimony that was proffered by Mr. Hewitt was — he made allegations about his belief about a pattern or practice.

Hewitt Tr. at 111:8–17. Given Hewitt's mention of a pattern and practice of discrimination, Briody's dispute of that characterization, and the nature of ▮▮▮▮, the Court noted there was a possibility of a conflict of interest in McKool Smith's continued representation of both Travelex and Hewitt. *Id.* at 112:15–17.

Based on the parties' presentations, the Court forbid Sardina from inquiring further into ▮▮▮▮▮ during the deposition. Hewitt Tr. at 114:20–115:1. The Court further advised Briody to allow Hewitt to consult with neutral counsel "as to whether or not he's being fairly represented by [McKool Smith] in this case." *Id.* at 115:2–6. The Court granted Sardina leave to make additional applications for discovery raised in the deposition and adjourned the conference. *Id.* at 116:10–13. After breaking for about an hour, Briody suspended the deposition to address the Court's

6

concerns. *Id.* at 117:1–9. When the deposition was suspended, Hewitt had been on the record for "less than three hours." *Id.* at 117:13.

On July 5, 2020, five days after Hewitt's deposition, PEI filed a letter with the Court asking for permission to ask "Mr. Hewitt and other Travelex witnesses questions related to a 'pattern and practice' of discrimination at Travelex ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . . . ." Doc. 108 at 5. It also asked for a 30-day stay of discovery to account for delays it attributed to the potential conflict ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . *Id.* The Court granted the request for a stay on July 6 and ordered additional briefing. Doc. 110.

## II. DISCOVERABILITY OF TOPICS RAISED BY THE HEWITT DEPOSITION

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The scope discoverability is broader than that which is admissible in court; Rule 26(b) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). It is not unlimited, however, and "[t]he party seeking the discovery must make a *prima facie* showing, that the discovery sought is more than merely a fishing expedition." *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11 Civ. 976 (KAM) (JO), 2013 WL 12403049, at *2 (E.D.N.Y. Nov. 5, 2013) (internal citation and quotation removed), *aff'd sub nom. Sasmor v. Meisels*, 708 F. App'x 728 (2d Cir. 2017).

After Hewitt's deposition, Puente moves for leave to inquire into two areas of discovery:

(1) facts related to Travelex's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ contract; and

(2) facts related to the "pattern and practice" of discrimination at Travelex that Mr. Hewitt admitted existed in his short tenure at Travelex.

Doc. 115 at 1.

    A. ███████████████████████

The Court DENIES PEI's motion to inquire into any alleged ███████ ████████████████████████████████████ because PEI's request "is speculative and unlikely to lead to the discovery of admissible evidence." *287 Franklin Ave.*, 2013 WL 12403049, at *4. In its briefing, PEI argues such evidence is relevant to their case because it is "exactly in step" with their own allegations that Travelex manufactured cause to terminate is contract with PEI, in particular since ███████████████ involve ████████████████ Travelex and occur at approximately the same time. Doc. 108 at 7. In other words, PEI argues that because Travelex engaged in allegedly bad faith ██████████████████████████, it is more likely to have engaged in such bad faith termination in the case of PEI. This is a textbook example of propensity evidence and inadmissible, especially since PEI has not made any *prima facie* case for the evidence to be probative of, for example, opportunity, intent, or plan. *See* Fed. R. Evid. 404(b); *cf. Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789 (ER) (JLC), 2016 WL 303114, at *4 (S.D.N.Y. Jan. 25, 2016) ("Finally, even if Defendant's speculation were justified in some way, the evidence to be adduced from the non-party employers would likely be inadmissible propensity evidence under Rule 404(a)").

Of course, PEI may inquire into whether Travelex manipulated metrics associated with PEI's contract. Indeed, as Travelex represents, PEI has done just that through the engagement of a financial expert who is opining on the accuracy and good faith basis for certain records produced by Travelex. *See* Doc. 111 at 8. And PEI may ask Hewitt if he witnessed or took part in any manipulation of PEI's records while he was CEO. But it may not ████████████████████████████████████████████████████ ████████████████████████████████████████████

### B. A "Pattern and Practice of Discrimination"

PEI next asks for permission to inquire into whether Travelex discriminated against PEI in Travelex's administration and termination of their contracts. Its application is GRANTED in part, insofar as it wishes to explore the role of discrimination in Travelex's termination of PEI's contract. Its application is DENIED in part, insofar as it seeks to explore a "pattern and practice of discrimination" unrelated to Travelex's relationship with PEI.

"There is no doubt that motive is irrelevant to the issue of whether a non-breaching party properly terminated a contract where that party has established an independent legal right to terminate." *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 409 (S.D.N.Y. 1999). Motive evidence *is* relevant, however, to the issue of whether a party showed bad faith in the exercise of discretion granted to it by a contract. *See id.*; *see also Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("[The covenant of good faith and fair dealing] embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." (internal quotations and citations removed); *India.com, Inc. v. Dalal*, 324 F. App'x 59, 61 (2d Cir. 2009) ("[B]ad faith requires a degree of malice or sinister motive . . . .").

PEI's attempt to explore whether discrimination affected its termination by Travelex falls within the permissible grounds for discovering motive evidence. PEI asserts an affirmative defense that Travelex breached the implied covenant of good faith and fair dealing. *See Dalton*, 663 N.E.2d at 291. And, in its counterclaim, PEI alleges that Travelex made a bad faith determination that it was "insecure as to [PEI's] future performance of a mutual obligation" under the Houston agreement. Answer & Counterclaim ¶¶ 109, 113. Unlike the cases cited by Travelex — including *Major*

9

*Oldsmobile, Inc. v. Gen. Motors Corp.*, 101 F.3d 684 (2d Cir. 1996) (unpublished) — this case does not yet include a determination by this Court that Travelex's termination of PEI was allowed by their contract. *See Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 Civ. 2570 (HB), 2009 WL 2710209, at *2 (S.D.N.Y. Aug. 25, 2009) (distinguishing *Major Oldsmobile* because whether a party properly terminated a contract was still an "open question" in the pending case). Accordingly, the motives behind Travelex's treatment of PEI are discoverable as relevant to Travelex's good faith in its business decisions.

The Court's permission is limited, however, to the relationship between PEI and Travelex. For the same reasons articulated in Part II.A, PEI may not inquire into a broader "pattern and practice of discrimination" at Travelex as it relates to any matter other than Travelex's relationship with PEI — ▮

▮ *See* Fed. R. Evid. 404(b). ▮

▮ *See 287 Franklin Ave.*, 2013 WL 12403049, at *2.

The Court must stress that it does not expect its decision in this matter to greatly (if at all) expand discovery, which has been in progress now for over two years. This is particularly so given Hewitt's steadfast testimony that ▮ ▮. This case remains a contract dispute under New York law, not a claim of discrimination under Title VII of the Civil Rights Act or some other statutory authority. The parties' submissions make clear that extensive

document production has already occurred, including the extent of Travelex's dealings with its vendors at other airports. The Court will view any application to reopen phases of discovery already completed with skepticism.

### III. MOTION FOR SANCTIONS

PEI moves for sanctions against Travelex's counsel, Briody, for his behavior during Hewitt's deposition. In particular, PEI alleges that Briody impeded the deposition by failing to address a foreseeable and avoidable conflict ▮ and through his interjections during the deposition itself. The Court DENIES that request.

"The court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Such sanctions are generally only imposed for "extreme conduct." *Severstal Wheeling Inc. v. WPN Corp.*, No. 10 Civ. 954 (LTS) (GWG), 2012 WL 1982132 (S.D.N.Y. May 30, 2012).

The Court does not find that such extreme conduct occurred here. The deposition went on for some time after the disagreement over the discoverability ▮ ▮ PEI will have an opportunity to finish the deposition soon, limiting the injury to PEI. *See Cameron Indus., Inc. v. Mothers Work, Inc.*, No. 06 Civ. 1999 (BSJ) (HBP), 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007). Indeed, as described above, the Court has found that some of the topics PEI sought to explore were irrelevant to this case, and so were appropriately objected to. Furthermore, the Court does not find Briody's failure to anticipate the specter of a conflict ▮ ▮ as the type of extreme conduct that would merits sanctions. The Court trusts ▮ counsel will quickly resolve any potential conflicts and allow discovery to expeditiously proceed.

11

## IV. CONCLUSION

For the foregoing reasons PEI's motion for discovery is GRANTED in part and DENIED in part. Its motion for sanctions is DENIED. Counsel for both Hewitt and Travelex, whether from McKool Smith or another firm, are directed to submit declarations to the Court by August 21, 2020, describing steps taken to discover and mitigate any potential conflict in the prosecution of this case. The parties are further directed to submit by August 21 a new discovery schedule ending discovery no later than October 8, 2020. The Clerk of Court is respectfully directed to terminate the motions, Doc. 103 and 108.

It is SO ORDERED.

Dated: August 12, 2020
       New York, New York

                                                  EDGARDO RAMOS, U.S.D.J.